**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **AMBER N. SHARPE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Case No. _____ |
| | ) | |
| **CORECIVIC OF TENNESSEE, LLC,** | ) | **JURY TRIAL DEMAND (12)** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Comes now the Plaintiff, AMBER N. SHARPE ("Plaintiff"), by and through counsel and files this civil action against the Defendant, and CORECIVIC OF TENNESSEE, LLC, ("Defendant"). For grounds it would be shown:

### I. PARTIES

1.      The Plaintiff, Amber Sharpe, is a resident of Trousdale County, Tennessee.

2.      Defendant, CoreCivic of Tennessee, LLC is a private limited liability company duly organized under the laws of Tennessee and doing business in the State of Tennessee. Defendant, CoreCivic of Tennessee, LLC may be served with process by serving one of its registered agents for service of process, C T Corporation System, located at 300 Montvue Road, Knoxville, TN 37919-5546.

3.      The facts and circumstances giving rise to these causes of action, or a certain of them, occurred in Hartsville, Trousdale County, Tennessee.

## II. JURISDICTION AND VENUE

4.      Plaintiff's causes of action arise under the laws of the United States, namely Title VII of the Civil Rights Act of 1964. Plaintiff brings this Complaint based on the claims stated herein in U.S. District Court under federal question jurisdiction, 28 U.S.C. § 1331.

5.      A certain of Plaintiff's causes of action arise under and by virtue of the laws of the State of Tennessee. Said claims are so related to claims in the action within the U.S. District Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Accordingly, the U.S. District Court exercises jurisdiction over said claims pursuant to supplemental jurisdiction, 28 U.S.C. § 1367.

6.      Venue in this District is proper pursuant to 28 U.S.C. § 1391, in that the Defendant or its agents, or a certain of them, may be found here; a substantial part of the events giving rise to Plaintiff's claims occurred here; and the Defendant transacts business here.

7.      Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), EEOC Charge No.: 494-2019-01313, based on Defendant's violations of Title VII of the Civil Rights Act of 1964. Plaintiff subsequently requested that the EEOC issue her a Right to Sue letter. The EEOC issued a Right to Sue letter dated November 15, 2029, which Plaintiff received on or about November 18, 2019.

## III. ALLEGATIONS OF FACT

8.      On September 3, 2018, Plaintiff commenced work as a Correctional Officer (CO) at Trousdale Turner Correctional Facility in Hartsville, Trousdale County, Tennessee.

9.      Trousdale Turner Correctional Facility is a carceral facility of the State of Tennessee which is administrated, staffed, and operated by Defendant, CoreCivic of Tennessee, LLC under full authority of the State of Tennessee.

10.    At all times relevant to this action, Plaintiff was an employee of Defendant, CoreCivic of Tennessee, LLC.

11.    Beginning on or about December 10, 2018, certain employees of Defendant, CoreCivic of Tennessee, LLC began engaging in a pattern of unwelcome, harassing, and sexually demeaning conduct toward Plaintiff.

12.    On or about December 10, 2018, Correctional Officer Billings made unwelcome and offensive sexual comments to Plaintiff in the presence of inmates.

13.    In the incident of December 10, Correctional Officer Billings said to Plaintiff, "You sound like you need a full body massage with oil," and, "Come in to the break room and we will take care of that."

14.    Plaintiff responded, "No," to Correctional Officer Billings' sexual advances.

15.    Correctional Officer Billings persisted in his unwelcome sexual propositions toward Plaintiff despite the Plaintiff telling him to stop.

16.    This conduct was observed by no fewer than five (5) facility inmates.

17.    Several weeks after the incident of December 10, 2018, Correctional Officer Billings again propositioned Plaintiff to engage in sexual contact.

18.    Plaintiff responded by saying, "No, I'm engaged."

19.    Several weeks after the aforementioned incident, Correctional Officer Billings again made unwelcome sexual advances toward Plaintiff.

20.    In the third incident of unwelcome and harassing conduct, Plaintiff was in the break room as Correctional Officer Billings was about to start his shift.

21.    Plaintiff, fully clothed, was fixing her shirt. Correctional Officer Billings came at Plaintiff with his right hand outstretched in a claw-like position, moving toward Plaintiff's chest.

22.     Plaintiff screamed, "Whoa! What are you doing?"

23.     Correctional Officer Billings said, "Come on. Let me see," while pointing at Plaintiff's chest.

24.     Plaintiff said, "No."

25.     In said instance, Correctional Officer Billings propositioned Plaintiff no less than three times to pull down her shirt to allow Correctional Officer Billings to see Plaintiff's bare chest. Plaintiff refused each time.

26.     The same day, Plaintiff reported Correctional Officer Billings' unwelcome, sexually harassing conduct to her supervisor Lieutenant Williams. Plaintiff told Lieutenant Williams that she was "sick and tired of all this."

27.     Lieutenant Williams failed to take any action in response to Plaintiff's complaint of sexual harassment.

28.     Defendant, CoreCivic of Tennessee, LLC failed to take any remedial action in response to Plaintiff's complaint of sexual harassment to Lieutenant Williams.

29.     Following Plaintiff's report of sexual harassment to Lieutenant Williams, Defendant, CoreCivic of Tennessee, LLC, through its employees and/or agents, began a pattern of retaliatory conduct toward Plaintiff aimed at coercing the Plaintiff to resign from her employment for Defendant.

30.     On January 10, 2019, Plaintiff went to the office of Assistant Warden Yolanda Pittman. Plaintiff reported to Ms. Yolanda Pittman that Plaintiff had been sexually harassed the previous day.

31.     Ms. Pittman handed the Plaintiff a pen. After Plaintiff accepted the pen from Ms. Pittman, Ms. Pittman stated, "I know you didn't just snatch that pen out of my hand," and "Hell

no! You better get her out of here!" Ms. Pittman became verbally and physically belligerent toward Plaintiff and had to be physically restrained by other employees to prevent her from battering the Plaintiff.

32.     Following the incident with Assistant Warden Yolanda Pittman, the Plaintiff and Ms. Pittman were placed on administrative leave.

33.     On March 21, 2019, Plaintiff returned to work for Defendant, following more than two months of administrative suspension.

34.     When Plaintiff returned to work, she was subjected to false rumors from inmates, including falsity that she performed sexual favors for guards and inmates. Plaintiff is informed and believes that such falsities originated from and were proliferated by employees and agents of Defendant, following Plaintiff's complaints of sexual harassment.

35.     The false rumors of sexual impropriety proliferated by agents/employees of Defendant made it impossible for Plaintiff to perform her job as correctional officer.

36.     On or about March 25, 2019, resigned her employment.

### IV. SEXUAL HARASSMENT AND SEX DISCRIMINATION

37.     Plaintiff incorporates all of the statements contained in each of the numbered paragraphs above as if fully set forth herein.

38.     Defendant's employees, during the course and scope of their employment for Defendant, regularly engaged in sexually harassing conduct towards Plaintiff.

39.     This sexually harassing conduct was severe, pervasive, and offensive to a reasonable person and created a hostile work environment which interfered with Plaintiff's emotional and physical well-being.

40. Defendant, through its agents or supervisors failed to adequately supervise, control, discipline, and/or otherwise penalize the conduct of its employees toward Plaintiff.

41. As a direct and proximate result of the hostile and offensive work environment perpetrated by Defendant's agents and/or employees, and Defendant's failure to protect Plaintiff from such discrimination, the Plaintiff suffered humiliation, emotional distress, and mental anguish. Accordingly, Plaintiff is entitled to general and compensatory damages in an amount to be proven at trial.

42. The conduct of Defendant, as described above, constitutes impermissible sex discrimination in violation of the Title VII of the Civil Rights Act of 1964.

## V. RETALIATION

43. Plaintiff incorporates all of the statements contained in each of the numbered paragraphs above as if fully set forth herein.

44. As herein alleged, Defendant, by and through its officers, managing agents and/or its supervisors, illegally retaliated against Plaintiff by subjecting her to unjust scrutiny, false allegations of misconduct and unwelcome and derisive comments solely because she had reported the aforementioned sex discrimination. Further, Defendant retaliated against Plaintiff by constructively terminating Plaintiff's employment. Defendant had no legitimate reasons for any such act. Each said act of retaliation is in violation of Title VII of the Civil Rights Act of 1964.

45. As a direct and proximate result of Defendant's acts of retaliation against Plaintiff, Plaintiff suffered harms, including humiliation and mental anguish, and, ultimately, Plaintiff's constructive termination from her employment for Defendant. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

## VI.  WRONGFUL TERMINATION: BREACH OF CONTRACT

46.    Plaintiff incorporates all of the statements contained in each of the numbered paragraphs above as if fully set forth herein.

47.    Plaintiff was employed as a sales representative for Defendant under a valid and legally-binding employment agreement.

48.    After Plaintiff was initially hired by Defendant, Plaintiff undertook and continued employment, and duly performed all of the conditions of the above said employment agreement to be performed by Plaintiff until prevented from doing so by Defendant's illegal constructive termination of Plaintiff. At the time of Plaintiff's termination, she was ready, willing, and able to perform all of the duties and conditions of the employment agreement to be performed by Plaintiff.

49.    Defendant constructively terminated Plaintiff's employment without cause and for a discriminatory purpose, namely for pretextual and defamatory reasons in retaliation for her reports and complaints of sexual harassment.

50.    Defendant's termination of Plaintiff is in direct contravention of public policy for the reasons described above, and as such, said termination is illegal and is excepted from the employment-at-will doctrine.

51.    As a direct and proximate result of Defendant's wrongful termination of Plaintiff, Plaintiff suffered damages in an amount to be proven at trial.

## VII.  WRONGFUL TERMINATION: VIOLATION OF PUBLIC POLICY

52.    Plaintiff incorporates all of the statements contained in each of the numbered paragraphs above as if fully set forth herein.

53.    Defendant constructively terminated Plaintiff from her employment because of Plaintiff's complaints and reports of sexual harassment.

54.     Defendant's constructive termination of Plaintiff, as described above, constitutes a violation of public policy and is thus illegal.

55.     As a proximate result of this wrongful termination in violation of public policy, Plaintiff was caused to suffer, and continues to suffer, from humiliation, anxiety, and severe emotional distress. Accordingly, Plaintiff is entitled to special and general damages in an amount to be proven at trial.

56.     Plaintiff would state that Defendant's conduct, described above, was reckless and therefore justifies an award of punitive damages.

## VIII.  DEFAMATION

57.     Plaintiff incorporates all of the statements contained in each of the numbered paragraphs above as if fully set forth herein.

58.     Plaintiff is informed and believes that Defendant, by Defendant's employees and/or agents, by the herein-described acts, conspired to, and in fact, did negligently and recklessly cause excessive and unsolicited internal and external publications of defamation, of and concerning Plaintiff, to third persons and to the community. These false and defamatory statements included express and implied accusations that Plaintiff violated company policies; that she was such a poor performer; that she deserved warnings and disciplinary actions against her; that she was incompetent and a troublemaker; and was dishonest. These and other similar false statements expressly and impliedly stated that Plaintiff was dishonest, lazy, incompetent, and a poor performer.

59.     The conduct of Defendant, as described above, constitutes defamation.

60.     The Defendant's defamatory publications consisted of oral and written, knowingly false and unprivileged communications, tending directly to injure Plaintiff and Plaintiff's personal,

business, and professional reputation. As a direct and proximate result of said acts of defamation, Plaintiff suffered harms and continues to suffer harms.

61.     The Defendant's acts of defamation directly impugned Plaintiff's professional and business reputation. As such, damages for the Plaintiff are presumed.

62.     Plaintiff would state that Defendant's conduct, described above, was reckless and therefore justifies an award of punitive damages.

## IX.  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

63.     Plaintiff incorporates all of the statements contained in each of the numbered paragraphs above as if fully set forth herein.

64.     The conduct of Defendant, as described above, was offensive and outrageous to a reasonable person and was undertaken with reckless disregard for whether Plaintiff would suffer emotional distress. Plaintiff indeed suffered emotional distress, including depression and anxiety for which Plaintiff has received medical/therapeutic treatment.

65.     As a direct and proximate result of the Defendant's conduct, as described above, Plaintiff was harmed and continues to be harmed.

66.     Plaintiff would state that Defendant's conduct, described above, was reckless and therefore justifies an award of punitive damages.

## X.  DAMAGES

67.     As a direct and proximate result of the Defendant's unlawful conduct, as indicated above, Plaintiff suffered damages, including but not limited to:

      a.      Plaintiff's humiliation and embarrassment due to sex discrimination;

      b.      Plaintiff's lost wages and benefits;

      c.      Plaintiff's reasonable medical and/or therapeutic expenses;

    d.      Plaintiff's reputational injuries which resulted from the conduct of Defendant;

    e.      Plaintiff's mental and emotional suffering, grief, and anguish;

    f.      Plaintiff's legal fees; and

    g.      All other damages and general relief in an amount to be proven at trial.

68.    Plaintiff has sustained and will continue to sustain further additional damages as a result of Defendant's unlawful conduct.

69.    As a direct and proximate result of the Defendant's unlawful acts and/or omissions, Plaintiff is entitled to recover, from the Defendant, compensatory damages for the damages set out in this Complaint.

## XII.  RELIEF SOUGHT

WHEREFORE, PREMISES CONSIDERED, the Plaintiff prays for relief as follows:

A.    That process issue and be served to Defendant, requiring Defendant to respond in accordance with the *Federal Rules of Civil Procedure*.

B.    That Plaintiff be awarded compensatory damages in an amount the jury determines to be fair and reasonable under the law and evidence, but in no event less than the amount of $250,000.00.

C.    That Plaintiff be awarded punitive damages in an amount the jury determines to be fair and reasonable under the law and evidence.

D.    That a jury of twelve (12) persons be empaneled in this case to try all matters properly reserved for jury consideration.

E.    That Plaintiff be awarded discretionary costs, and costs of this cause.

F.    That Plaintiff be awarded reasonable attorney's fees.

G.      That Plaintiff be awarded such other general relief the Court deems just and proper.

Respectfully submitted on this the 10th day of February, 2020, by the following counsel:

**LAW OFFICE OF MICHAL DURAKIEWICZ**

*/s/ Michal Durakiewicz*
**MICHAL DURAKIEWICZ** (TN BPR No. 34570)
725 Cool Springs Boulevard, Suite 600
Franklin, Tennessee 37067
Phone: (615) 812-2829
Email: mike.durak15@gmail.com

*Attorney for Plaintiff, Amber Sharpe*